**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**LAURA DAWN CARR, ANTOINE JENKINS,**
**NANA S. EPHRAIM, ANTHONY JONES,**
**ROBIN JONES, VIVIAN BAILEY, KENNETH**
**MAURICE DENSON, VONTASIA SAKIA OLDS,**
**DOMINIQUE COX, ERICA WILLIAMS,**
**JAMES GREGORY PARKER, ANGELA BOONE**
and **NYAH CHERRY,** *Individually, on behalf of*
*themselves and others similarly situated,*

                    Plaintiffs,

          **v.**                                    **Case No.**  3:25CV-768-DJH

**PHARMERICA DRUG SYSTEMS, LLC,**
**D/B/A DILIGENT DELIVERY SYSTEMS**
and **LARRY BROWNE,** *Individually*

                                              **FLSA 216(b) Action**
                                              **Rule 23 Class Action**
                                              **JURY DEMANDED**

                    Defendants

---

### ORIGINAL FLSA MULTI-PLAINTIFF AND CLASS ACTION COMPLAINT

---

Laura Dawn Carr, Antoine Jenkins, Nana S. Ephraim, Anthony Jones, Robin Jones, Vivian Bailey, Kenneth Maurice Denson, Vontasia Sakia Olds, Dominique Cox, Erica Williams, James Gregory Parker, Angela Boone and Nyah Cherry ("Plaintiffs") individually, and on behalf of themselves and other similarly situated current and former non-exempt driver employees (misclassified as independent contractors) bring this Fair Labor Standards Act ("FLSA") 216(b) multi-plaintiff action and Rule 23 class action against PharMerica Drug Systems, LLC, doing business as ("d/b/a") Diligent Delivery Systems, and Larry Browne, individually ("Defendants") and allege as follows:

1

## I.  <u>NATURE OF SUIT</u>

1.    This lawsuit is brought against Defendants as a multi-plaintiff action under the FLSA, 29 U.S.C. § 201, *et seq.,* to recover the applicable FLSA minimum wage and overtime compensation owed to Plaintiffs and other similarly situated non-exempt driver employees (misclassified as independent contractors) who are members of an FLSA multi-plaintiff action as defined herein and currently or previously employed by Defendants during all times material.

2.    This lawsuit is also brought as a Fed. R. Civ. P. 23 class action.

## II.  <u>SUMMARY</u>

3.    Defendant, PharMerica Drug Systems, LLC ("PharMerica"), doing business as Diligent Delivery Systems ("Diligent"), engaged Diligent to use independent contract drivers to deliver medications to its customers, consisting of senior living communities, hospitals, behavioral facilities, and home infusion patients.

4.    In turn, Diligent Delivery Systems, under the ownership, control, and direction of its CEO, Defendant Larry Browne, entered into contracts with Plaintiffs and similarly situated driver employees and classified them as independent contractors (instead of as employees) to deliver PharMerica medications to its customers.

5.    Plaintiffs and similarly situated driver employees did not qualify as independent contractors because they did not meet the FLSA "economic realities" tests, as addressed hereinafter.

6.    Diligent paid Plaintiffs and similarly situated driver employees a "route pay" per work day, regardless of the time it took them to complete their assigned route(s) each work day.

7.    Plaintiffs and similarly situated driver employees were required to use their own vehicles in the delivery of PharMerica medications and pay for all the expenses associated with the use of their vehicles, such as the costs of fuel, repairs, oil changes, maintenance, insurance, and depreciation.

8.    By misclassifying Plaintiffs and similarly situated driver employees as independent contractors, PharMerica shifted its "employee benefit" costs, such as its share of social security contributions, workers' compensation insurance, unemployment insurance, and other "employee benefits" upon Plaintiffs and similarly situated driver employees.

9.    In addition, by misclassifying Plaintiffs and similarly situated driver employees as independent contractors and requiring them to provide their own vehicles and the expenses of operating their vehicles in the transportation and delivery of PharMerica medications, PharMerica shifted its transportation costs onto Plaintiffs and similarly situated driver employees.

10.    However, when PharMerica "employee benefits" and transportation costs – as shifted from it to Plaintiffs and similarly situated driver employees – are deducted from their "route pay," Plaintiffs and similarly situated driver employees were paid far less than the FLSA minimum wage and any applicable overtime compensation rates of pay for their compensable hours of work within weekly pay periods during all times material to this action.

11.    The Secretary of the U.S. Department of Labor brought a similar lawsuit against Diligent, Larry Browne, and their agents for unlawfully misclassifying employee drivers as independent contractors and for failing to pay them at least the FLSA minimum wage and any applicable overtime compensation when their agent's cost of

drivers share of social security contributions, the cost of workers' compensation insurance, unemployment insurance other "employee benefits," and the cost of fuel reduced the driver employees' pay below the FLSA minimum wage and any applicable overtime compensation requirements. *See Perez v. Arizona Logistics, Inc., d/b/a Diligent Delivery Systems*, No. CV-16-04499 (D. Ariz, 2022) (attached hereto as *Exhibit A*).

12. In that case, Diligent, Larry Browne, and their agents were required to pay the driver employees more than $5,700,000.00 in back wages and liquidated damages. They were also required to pay $100,000 in civil monetary penalties. *Id*.

### III.  JURISDICTION AND VENUE

13. The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 to recover unpaid back wages, an additional equal amount as liquidated damages, and reasonable attorney's fees and costs.

14. This court has jurisdiction over Fed. R. Civ. P. 23 class action claims herein under 28 U.S.C. § 1367 because the claims are so related to claims of this action within the court's original jurisdiction in that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c) because PharMerica's headquarters are located in this district and it has conducted business in this district during all times material to this action.

## IV.  **PARTIES**

16. Plaintiffs Laura Dawn Carr, Antoine Jenkins, Nana S. Ephraim, Anthony Jones, Robin Jones, Vivian Bailey, Kenneth Maurice Denson, Vontasia Sakia Olds, Dominique Cox, Erica Williams, James Gregory Parker, Angela Boone, and Nyah Cherry are adult citizens of the United States and were employed by Defendants as non-exempt driver employees (misclassified as independent contractors) during all times relevant to this action. Plaintiffs' "Consents to Join" is attached as *Exhibit B*.

17. Defendant, PharMerica Drug Systems, LLC, is a Delaware limited liability company with its principal address listed as 805 North Whittingham Parkway, Louisville, Kentucky 40222.  Defendant's registered agent for service of process is: Corporation Services Company, 421 West Main Street, Frankfort, Kentucky 40601.

18. Diligent Delivery Systems is a business entity and provides companies, such as PharMerica, with delivery and logistics services. It is located at 9200 Derrington Road, Suites 100 and 200, Houston, Texas 77064.

19. Defendant Larry Browne is the owner and CEO of Diligent Delivery Systems. He may be served process at 9200 Derrington Road, Suites 100 and 200, Houston, Texas 77064.

20. Upon information and belief, Defendant Larry Browne has been responsible for the implementation and administration of the pay and timekeeping policies and practices of Diligent Delivery Systems and, derivatively, those of PharMerica - during all times material.

21. As such, Defendant Browne is individually and jointly liable for all the FLSA and Rule 23 violations, as addressed below.

22.   PharMerica, Diligent, and Larry Browne are an integrated enterprise, as defined by the FLSA.

23.   PharMerica, Diligent, and Larry Browne are also joint employers of Plaintiffs and similarly situated driver employees, as defined by the FLSA.

## V.  COVERAGE

24.   Defendants have been the "employer" of Plaintiffs and similarly situated driver employees within the meaning of 29 U.S.C. § 203(d) of the FLSA during all times material to this action.

25.   During all time material, Defendants have earned more than $500,000.00 per year in gross sales.

26.   Defendants have employed two or more employees who handled goods, materials, and supplies that travelled in interstate commerce during all times relevant.

27.   In addition, Plaintiffs and those similarly situated have also engaged in interstate commerce on behalf of Defendants during all pertinent times.

28.   Therefore, Defendants are an enterprise covered by the FLSA, and as defined by 29 U.S.C. §203(r) and 203(s).

## VI. GENERAL ALLEGATIONS

29.   During all times material to this action and upon information and belief, Defendant PharMerica Drug Systems, Inc., entered into a scheme with Digital Delivery Systems and its CEO and owner, Larry Browne, for Diligent to deliver medications to its customers, such as to senior living facilities, hospitals, and home care companies throughout the United States.

30.     Instead of PharMerica hiring employees of its own to deliver its medications to its customers and assuming its "employee benefits" and transportation costs associated therewith, it contracted with Diligent for Diligent to "hire" Plaintiffs and similarly situated driver employees as independent contractors to make such deliveries on its behalf.

31.     In doing so, PharMerica shifted its costs of "employee benefits" and transportation upon Plaintiffs and similarly situated driver employees.

32.     However, Plaintiffs and those similarly situated did not qualify as independent contractors and were not exempt from receiving minimum wages and overtime compensation under the FLSA.

33.     More specifically, Plaintiffs and similarly situated driver employees were employees covered under the FLSA as a matter of economic reality rather than independent contractors during all times material to this action for the following reasons, among others:

(a)  Plaintiffs and similarly situated driver employees were economically dependent on their work for Defendants.

(b)  Defendants dictated the details of the performance of the work activities of Plaintiffs and similarly situated driver employees.

(c)  In effect, Plaintiffs and similarly situated driver employees were told how to do their job, when to do their job, and where to do their job by Defendants.

(d)  Defendants controlled the manner and methods by which Plaintiffs and similarly situated driver employees performed their work.

(e)  Defendants provided supervisors who oversaw and approved the work performed by Plaintiffs and similarly situated driver employees.

(f)  Defendants scheduled the time Plaintiffs and similarly situated driver employees were required to report to work, consistent with the time medications had to be picked up from PharMerica each work day.

(g)  Defendants scheduled the sequence of the route(s) of Plaintiffs and similarly situated driver employees and would not allow any deviation.

(h)  Defendants' supervisors monitored the work of Plaintiffs and similarly situated driver employees during their work "routes."

(i)  The work performed by Plaintiffs and similarly situated driver employees was an integral part of Defendants' business.

(j)  Plaintiffs and similarly situated drivers exercised no independent judgment or discretion in performing work for Defendants.

(k)  Plaintiffs and similarly situated driver employees performed delivery services for Defendants that were not outside the normal course of their business.

(l)  Plaintiffs and similarly situated driver employees were not able to engage in other work during their delivery assignments.

(m) Plaintiffs and similarly situated driver employees were engaged in work activities for lengthy periods of time by Diligent, initially for 12 months and automatically extended to additional months unless otherwise terminated.

(n)  Plaintiffs and similarly situated driver employees did not share in Defendants' monetary success since their income from their work was limited to their "route pay."

8

(o) The work of Plaintiffs and similarly situated driver employees did not require special skills, judgment, or initiative to perform their job.

(p) Plaintiffs and similarly situated driver employees had no authority to refuse or negotiate Defendants' rules and policies.

(q) Plaintiffs and similarly situated driver employees had no authority to negotiate Defendants' prices for PharMerica's medications.

(r) Plaintiffs and similarly situated driver employees had no authority to negotiate the amount of money they would be paid for their work.

(s) The duties of Plaintiffs and similarly situated driver employees did not involve any work of a managerial nature.

(t) Plaintiffs and similarly situated driver employees did not make any significant investments in relation to their work for Defendants.

(u) Plaintiffs and similarly situated driver employees had no opportunity to experience a profit related to their employment with Defendants. (They were limited to their "route pay.")

(v) Digital and its owner and CEO, Larry Browne, consented that their "driver employees" were employees instead of independent contractors in a similar case brought by the Secretary of the U.S. Department of Labor, as mentioned earlier. *See Perez v. Arizona Logistics, Inc, d/b/a Diligent Delivery Systems*, No. CV-16-04499 (D. Ariz. 2022) (attached hereto as *Exhibit A*).

34.    Thus, Plaintiffs and those similarly situated did not qualify as independent contractors and, therefore, were not exempt from the minimum wage and overtime compensation

requirements of the FLSA and of applicable state wage laws that had minimum wage rates of pay higher than those of the FLSA, as further addressed below.

35.    Consequently, any and all terms and conditions in any contracts between Diligent and Plaintiffs and similarly situated driver employees relative to their work for Defendants are/were unconscionable, null, void, and unenforceable.

36.    Plaintiffs Antoine Jenkins, Nana S. Ephraim, Anthony Jones, Robin Jones, Vivian Bailey, Kenneth Maurice Denson, Vontasia Sakia Olds, Dominique Cox, Erica Williams, James Gregory Parker, Angela Boone, and Nyah Cherry were terminated from their employment with Defendants "en masse" when they complained to Diligent about their rates of pay.

37.    Also, Diligent deducted $2.00 from the "route pay" of Plaintiffs and similarly situated driver employees each work day for its "independent contractor" administrative expenses.

38.    Plaintiffs and similarly situated driver employees are entitled to recover the $2.00 per work day that Diligent deducted from their "route pay for independent contractors' administrative expenses. (Plaintiffs and similarly situated driver employees were not independent contractors, and there was no justification for such deductions.)

39.    Defendants unjustly enriched themselves by deducting $2.00 per work day from Plaintiffs and similarly situated driver employees' "route pay" for "independent contractors" administrative expenses.

40.    Plaintiffs and similarly situated driver employees were required to report to a specific location at a particular time to pick up medications from PharMerica each workday.

41. During all times material, Plaintiffs and similarly situated driver employees routinely had to wait at the designated location for an hour, and sometimes for several additional hours, before the medications were ready to be picked up by them. (Once picked up, the medications were then delivered to PharMerica's customers by Plaintiffs and similarly situated driver employees.)

42. Plaintiffs and similarly situated driver employees were not paid for the first 45 minutes of such "wait" time.

43. They often were not paid for any time after 45 minutes of waiting for medications, even when turning in a form to be paid for "wait" time in excess of 45 minutes per work day, during all times material.

44. Plaintiffs and similarly situated driver employees are entitled to recover their unpaid "wait" time within weekly pay periods during all times material to this action.

45. Plaintiffs and similarly situated driver employees did not receive any "employee benefits" that other PharMerica employees received, including: Social Security contributions; medical, dental and vision insurance; 401(k) "matching" benefits; paid time off (PTO); paid holidays; tuition assistance; employee discounts, workers' compensation insurance coverage, unemployment insurance coverage, etc. – during all times material.

46. Moreover, Defendants did not reimburse Plaintiffs and similarly situated driver employees for their vehicle expenses when their vehicles were used to deliver PharMerica's medications to its customers.

47. By misclassifying Plaintiffs and similarly situated driver employees as independent contractors, Defendants shifted their costs of such "employee benefits" and transportation upon Plaintiffs and similarly situated driver employees.

48. Defendants' failure to pay such "employee benefits" on behalf of Plaintiffs and similarly situated driver employees is unlawful.

49. The costs of such shifted "employee benefits" upon Plaintiffs and similarly situated driver employees reduced their pay below the minimum wage and overtime compensation requirements of the FLSA and the applicable state wage laws, in which minimum wage rates of pay were higher than those of the FLSA.

50. In addition, the "actual" vehicle expenses of Plaintiffs and similarly situated driver employees reduced their pay below the minimum wage and overtime compensation requirements of the FLSA and the applicable state wage laws, in which minimum wage requirements were higher than those of the FLSA.

51. The net result of Defendants' failure to pay their share of the social security contributions and other "employee benefits" on behalf of Plaintiffs and similarly situated driver employees in combination with their failure to reimburse them for their vehicle expenses reduced their pay below the minimum wage and any applicable overtime compensation requirements of the FLSA and of the relevant state wage laws in which minimum wage requirements were higher than that of the FLSA.

52. As a result, Defendants willfully and, with reckless disregard of established FLSA wage provisions, failed to pay Plaintiffs and similarly situated driver employees minimum wages and any applicable overtime compensation under the FLSA, and under the relevant state wage laws in which minimum wages were higher than those of the FLSA.

53.    More specifically, such "employee benefit" costs and vehicle expense that reduced the wages of Plaintiff and similarly situated drivers below the FLSA minimum wage and overtime compensation requirements also reduced the wages of similarly situated driver employees below the minimum wage rates of pay in states that had minimum wage rates higher than that of the FLSA, such as in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Hawaii, Iowa, Illinois, Massachusetts, Maine, Maryland, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, Ohio, Oregon,  Rhode Island, South Dakota, Virginia, Washington State, West Virginia, and Wyoming.

54.    Defendants did not have a good faith basis for their violations of the FLSA and the applicable state wage laws, in which minimum wages were higher than those of the FLSA.

55.    Defendants failed to keep timely and accurate pay records of Plaintiffs and similarly situated driver employees as required by the FLSA and the applicable state wage laws, in which minimum wages were higher than those of the FLSA.

56.    The unpaid wage claims of Plaintiffs and similarly situated driver employees are unified through common theories of Defendants' FLSA violations.

57.    As a result of Defendants' willful failure to pay Plaintiffs and similarly situated driver employees in compliance with the minimum wage and overtime compensation requirements of the FLSA, as well as in compliance with the minimum wage and overtime requirements of applicable states in which minimum wage rates are higher than those of the FLSA, they have suffered lost compensable wages as well as having suffered other damages.

58.     Defendants' scheme of failing to compensate Plaintiffs and similarly situated driver
employees for all their compensable minimum wage and overtime compensation was
to save the costs of "employee benefits," transportation costs, payroll costs, and payroll
taxes, all for which they have unjustly enriched themselves and enjoyed ill-gained
profits at the expense of Plaintiffs and similarly situated driver employees.

### COUNT I
### FLSA MULTI-PLAINTIFF CLAIMS

59.     Plaintiffs incorporate by reference all preceding paragraphs as if entirely rewritten
herein.

60.     Plaintiffs bring this count to recover unpaid wages for themselves, individually, and on
behalf of themselves and those similarly situated as a multi-plaintiff action, pursuant to
the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

61.     The unpaid wages consist of unpaid minimum wages, unpaid overtime compensation,
and unpaid "waiting" time, as previously addressed.

62.     Plaintiffs seek to send notice to the following similarly situated current and former
driver employees of Defendants:

> All drivers who were misclassified as independent contractors and who
> performed work for Defendants anywhere in the United States at any time
> during the applicable statutory period covered by this Multi-Plaintiff Action
> Complaint (i.e. two years for FLSA violations, and three years for willful
> FLSA violations) up to and including the date of final judgment in this
> matter, and who is the Named Plaintiff and those who elect to join this
> action pursuant to the FLSA, 29 U.S.C. § 216(b) (collectively, "potential
> plaintiffs").

63.     The claims under the FLSA may be pursued by those who elect to join this action under
29 U.S.C. § 216(b).

64.     Plaintiffs and multi-plaintiffs were not paid the FLSA minimum wage and applicable
overtime compensation for their work time performed on behalf of Defendants because

14

they were unlawfully misclassified as independent contractors rather than non-exempt employees covered and protected by the FLSA.

65. The claims of Plaintiffs are typical of the claims of potential plaintiffs to this action.

66. Plaintiffs and potential plaintiffs to this action were similarly situated in that they were subjected to Defendants' unlawful common plan, policy and practice of misclassifying them as independent contractors and failing to pay them for all their compensable hours of work at the applicable FLSA minimum wage and overtime compensation rates of pay within weekly pay periods during all times material to this lawsuit, as previously described.

67. Plaintiffs and potential plaintiffs were similarly situated because they were subjected to the same operational and compensation plans, policies, and practices of Defendants that deprived them of at least the FLSA minimum wage and any applicable overtime compensation rates of pay within weekly pay periods during all times pertinent.

68. Plaintiffs and potential plaintiffs to this action also are/were similarly situated in that their unpaid wage claims are unified through common theories of Defendants' FLSA violations.

69. Plaintiffs will fairly and adequately protect the interests of potential plaintiffs to this action as their interests are aligned with the interests of such potential plaintiffs.

70. Plaintiffs have no interests adverse to the interests of potential plaintiffs to this action.

71. The claims of Plaintiffs are typical claims of those similarly situated.

72. Plaintiffs have retained competent counsel who are experienced in multi-plaintiff litigation.

73.     The multi-plaintiff action mechanism is superior to the other available methods for a fair and efficient adjudication of this controversy. The expenses, costs, and burden of litigation suffered by individual plaintiffs in a multi-plaintiff action are relatively small compared to those in individual actions, making it virtually impossible for plaintiffs to seek redress for the wrongs done to them individually.

74.     Plaintiffs and potential plaintiffs to this action have suffered and will continue to suffer irreparable damage from the unlawful pay and time-keeping plans, policies, and practices of Defendants during all times material.

## COUNT II
## RULE 23 CLASS ACTION – CLASS I – UNPAID WAGE CLAIMS

75.     Plaintiffs incorporate by reference all preceding paragraphs as if entirely rewritten herein.

76.     Plaintiffs bring this count as a Fed. R. Civ. P. 23 class action on behalf of Rule 23 Class I members to recover unpaid minimum wages and any applicable overtime compensation from Defendants in States in which Defendants have conducted business that have higher minimum wage and overtime requirements than those of the FLSA, during all times within the applicable statutes of limitations thereof.

77.     Specifically, Plaintiffs bring this Fed. R. Civ. P. 23(b)(3) class action against Defendants on behalf of the following Rule 23 Class I members:

> All current and former driver employees who were misclassified as independent contractors by Defendants in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Hawaii, Iowa, Illinois, Massachusetts, Maine, Maryland, Minnesota, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Rhode Island, South Dakota, Virginia, Washington, West Virginia during their applicable statutes of limitation periods preceding the filing of this Original Complaint, and who were not paid all wages and compensation owed them by Defendants (the "Rule 23 Class I").

78.    Defendants' failure to pay their driver employees the federal minimum wage rate and any applicable overtime compensation rates of pay caused corresponding violations in the states above that have higher minimum wage rates of pay than that of the FLSA.

79.    At all relevant times, Plaintiffs and similarly situated driver employees have been entitled to the rights, protections, and benefits provided under the wage laws of the following states, and any wage orders and/or regulations incorporated therein, to wit:

80.    **Arizona:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Act of the State of Arizona, Ariz. Rev. Stat. §§ 23-263, *et seq*.

81.    **Arkansas:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Arkansas, Ark. Code §§ 11- 4-201, *et seq*.

82.    **California:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of California, Cal. Lab. Code, Div. 2, Pt. 4, Ch. 1, et seq.

83.    **Colorado:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Colorado, C.R.S.A. §§ 8-6-101*, et seq*.

84.    **Connecticut:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Connecticut, Conn. Gen. Stat. Title 31, Ch 558, Pt 1, *et seq*.

85.    **Delaware:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Delaware, C.R.S.A.  19 Del. Code §§ 901*, et seq*.

86.    **Florida**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Florida, Florida Stat. § 448.110 *et seq*.

87.    **Hawaii:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Hawaii, C.R.S.A. HRS Div. 1, Title 21, Ch. 387, et. seq.

88.    **Illinois:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Illinois, 820 I.L.C.S. 105/1*, et seq*.

89.    **Iowa:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Iowa. Iowa Code § 91D.1 and Iowa Code §§ 91A.1, *et seq.*

90.    **Massachusetts**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Massachusetts. Mass. Gen. Laws, Ch. 151*, et seq*.

91.    **Maine**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Maine, Me. Rev. Stat. Ann. 26 § 661, *et seq*.

92. **Maryland:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Maryland. Md. Code §§ 3-401, *et seq*.

93. **Minnesota:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Minnesota. Minn. Stat. §§ 177.21, *et seq.*

94. **Missouri:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Missouri. Mo. Rev. Stat. §§ 290.500, *et seq.*

95. **Montana:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Montana. Mont. Code Ann. §§ 39-3-401. *et seq*.

96. **Nebraska**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Nebraska. Neb. Rev. Stat. §§ 48-1201, *et seq*.

97. **Nevada:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Nevada. Nev. Ann. Code §§ 608.250, *et seq*.

98. **New Jersey:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of New Jersey. N.J. Stat. Ann. §§ 34:11-56a, *et seq*.

99.   **New Mexico**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of New Mexico. N.M. Stat. §§ 50-4-20, *et seq*.

100.  **New York**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of New York. Laws of N.Y. Labor Code, Article 19, § 652, *et seq*.

101.  **Ohio:** The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Ohio. Ohio Rev. Code, Ch. 4111, *et seq*.

102.  **Oregon**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Oregon. Or. Rev. Stat. §§ 653.010. et seq.

103.  **Rhode Island**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Rhode Island. R.I. Gen. Laws, §§ 28-12-1, *et seq*.

104.  **South Dakota**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of South Dakota. S.D. Laws, §§ 60-11-1, *et seq*.

105.  **Virginia**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Virginia. Va. Code Ann. §§ 40.1-28 *et seq*.

106. **Washington**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of Washington. Wash. Rev. Code, Title 49, 49-46, *et seq.*

107. **West Virginia**: The aforementioned pay plan, policy, and practice of Defendants violated the minimum wage provisions of the Minimum Wage Law of the State of West Virginia. W.Va. Code. §§ 21-5C-1 *et seq.*

108. The state claims, if certified for class-wide treatment, are brought on behalf of all those similarly situated who do not opt out of the Rule 23 class.

109. The state law claims herein satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a Rule 23 class action.

110. The Rule 23 class I consists of hundreds of individuals who are geographically dispersed, and joinder of all parties is impracticable.

111. Questions of fact and law common to the Rule 23 class I predominate over any questions affecting only individual members.

112. The questions of law and fact common to the Rule 23 class I members include, without limitation:

   (a) Whether Defendants misclassified Rule 23 class I members as independent contractors rather than as employees under the respective state wage laws, as referenced in paragraphs 81 through 108 above;

   (b) Whether the terms and conditions contained in Defendants' contracts that misclassified Rule 23 class I members as independent contractors are unconscionable, null, void, and unenforceable under the laws of the referenced states in paragraphs 81 through 108 above;

(c) Whether Defendants' shifting of the costs of their share of Rule 23 class I members' social security contributions and other "employee benefits" onto Plaintiffs and Rule 23 class I members constituted illegal deductions from their wages under the laws of the respective states, as referenced in paragraphs 81 through 108 above;

(d) Whether Defendants' failure to pay the costs of Plaintiffs' share of Rule 23 class I members' social security contributions and other "employee benefits" reduced their wages below the minimum wage requirements of each respective state wage law, as referenced in paragraphs 81 through 108 above;

(e) Whether Defendants' failure to pay the costs of Rule 23 class I members' vehicle expenses acquired in the transport and delivery of Pharmerica's medications reduced their wages below the minimum wage requirements of each respective state wage law, as referenced in paragraphs 81 through 108 above;

(f)  Whether Defendants' failure to pay the costs of Rule 23 class I members' actual vehicle expenses acquired in the transport and delivery of Pharmerica's medications reduced their wages below the overtime compensation requirements of each respective state wage law, as referenced in paragraphs 81 through 108 above; and

(g) Whether the combination of Defendants' failure to pay the costs of their share of Rule 23 class I members' social security contributions and "employee benefits" on their behalf and the costs of Rule 23 class I members' actual vehicle expenses for the transport and delivery of Pharmerica's medications reduced their wages below the minimum wage requirements of each respective state wage law, as referenced in paragraphs 81 through 108 above.

113.    Relative to the allegations above, Plaintiff's claims are typical of Rule 23 class I claims.

114.    Plaintiffs' claims and those of the members of the Rule 23 Class I arose from the same Defendants' actions or inactions herein, and the claims are based on the same legal theories.

115.    The identity of the Rule 23 Class I members is readily ascertainable. (For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.)

116.    Plaintiffs are adequate class representatives.

117.    Plaintiffs' unpaid wage claims are typical of those claims that could be alleged by any member of the Rule 23 Class I, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 class I in separate actions.

118.    Plaintiffs and Rule 23 Class I members are/were subject to the same unlawful practices of Defendants in their failure to pay them all their earned wages.

119.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of the Rule 23 Class I claims herein, where an individual Plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendant.

120.    Class action treatment will permit other similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions require.

121.    The adjudication of individual litigation claims would result in a significant expenditure of Court and public resources. However, treating the claims as a class action would result in significant savings.

122.   Although the relative damages suffered by individuals in the class are not *de minimis,* such damages are minor compared to the expense and burden of individual prosecution of this litigation.

123.   As a result, class treatment is a superior mechanism for resolving this dispute compared to adjudicating individual litigation claims.

124.   Current employees often fear asserting their rights due to concerns about direct or indirect retaliation. Former employees may be hesitant to bring individual claims because doing so could harm their employment prospects, future employment opportunities, and efforts to secure new employment. (Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.)

125.   Plaintiffs have engaged legal counsel experienced in Rule 23 class action litigation to pursue the unpaid wage claims of themselves and other Rule 23 class I members

126.   The class action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy.  The expenses, costs, and burden of litigation suffered by Plaintiffs and other members of this Rule 23 class I action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to seek redress for the wrongs done to them individually.

127.   Plaintiffs and other members of this Rule 23 class have suffered and will continue to suffer irreparable damage from the unlawful wage practices implemented and administered by Defendants.

## COUNT III
## RULE 23 CLASS ACTION – CLASS II – UNJUST ENRICHMENT CLAIMS

128.     Plaintiffs incorporate by reference all preceding paragraphs as if entirely rewritten herein.

129.     Plaintiffs bring this count as a Fed. R. Civ. P. 23 class action on behalf of Plaintiffs and Rule 23 Class II members to recover restitution for the unjust enrichment that Defendants have received by shifting their "employee benefits" and transportation costs upon Plaintiffs and similarly situated driver employees of Defendants that, in turn, reduced their "route pay" below minimum wage and any applicable overtime compensation requirements of the FLSA  and the minimum wage requirements of the wage laws of the states identified below.

130.     Plaintiffs also bring this count as a Fed. R. Civ. P. 23 class action on behalf of themselves and Rule 23 class II members to recover restitution for the $2.00 per work day that Defendants deducted from the "route pay" of Plaintiffs and Rule 23 class II members for so-called "independent contractor" administration expenses.

131.     Specifically, Plaintiffs bring this Fed. R. Civ. P. 23(b)(3) class action against Defendants on behalf of the following Rule 23 class II members:

> All current and former driver employees who were misclassified as independent contractors by Defendants in the states of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin and Wyoming during their applicable statutes of limitation periods preceding the filing of this Original Complaint, and who were not paid all wages and compensation owed them because of Defendants' unjust enrichments, as stated herein (the "Rule 23 Class II").

132.    Defendants received the aforementioned unjust enrichment at the expense of Plaintiffs and Rule 23 Class II members.

133.    It would be unfair and unjust for Defendants to retain such unjust enrichment at the expense of Plaintiffs and Rule 23 Class II members.

134.    Plaintiffs and Rule 23 Class II members are entitled to restitution and/or damages in the amount that Defendants saved by shifting their "employee benefits" and transportation costs upon Plaintiffs and similarly situated driver employees.

135.    Plaintiffs and Rule 23 Class II members are entitled to restitution and/or damages in the amount saved by Defendants in shifting their "employee benefit" and transportation costs upon Plaintiff and Rule 23 Class II members that caused their "route pay" to be reduced below the minimum wage and any applicable overtime compensation requirements of the wage laws of states that have minimum wage requirements higher than that of the FLSA, as referenced previously.

136.    Plaintiffs and Rule 23 Class II members also are entitled to restitution and/or damages for the $2.00 per workday Defendants deducted from their "route Pay" for so-called "independent contractor" administrative expenses.

137.    Any contracts Plaintiffs and Rule 23 Class II members entered into or were required to enter into as a condition of their working relationship with Defendants relative to these unjust enrichment claims are unconscionable, null, void, and unenforceable.

138.    At all relevant times, Plaintiffs and similarly situated driver employees have been entitled to the rights, protections, and benefits provided under the unjust enrichment laws of the states identified above. (Unjust enrichment claims are recognized by the

courts in all states under common law except in the state of Louisiana, which has its unjust enrichment law codified as Article 2298 of the Louisiana Civil Code.)

139. The state wage claims, if certified for class-wide treatment, are brought on behalf of all those similarly situated who do not opt out of the Rule 23 class II.

140. The state law claims herein satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a Rule 23 Class II action.

141. The Rule 23 Class II consists of hundreds of individuals who are geographically dispersed, and joinder of all parties is impracticable.

142. Questions of fact and law common to the Rule 23 Class II predominate over any questions affecting only individual members.

143. The questions of law and fact common to the Rule 23 Class II members include, without limitation:

    (a) Whether Defendants unjustly enriched themselves at the expense of Plaintiffs and Rule 23 Class II members by shifting their "employee benefit" and transportation costs upon Plaintiff and Rule 23 class II members;

    (b) Whether Defendants unjustly enriched themselves at the expense of Plaintiffs and Rule 23 Class II members by deducting $2.00 per work day for "independent contractor" administrative costs from the "route pay" of Plaintiffs and Rule 23 Class II members;

    (c) Whether it would be unfair and unjust for Defendants to retain the amount they saved by shifting their "employee and transportation costs upon plaintiff and Rule 23 Class II members;

(d) Whether Plaintiffs and Rule 23 Class II members are entitled to restitution and/or damages by the amount Defendants saved by shifting their "employee benefit" and transportation costs upon Plaintiffs and Rule 23 Class II members;

(e) Whether Plaintiffs and Rule 23 Class II members are entitled to restitution and/or damages by the amount Defendants saved by shifting their "employee benefit" and transportation costs to Plaintiffs and Rule 23 Class II members that reduced their pay below the minimum wage requirements of the FLSA and that of the states identified above; and

(f) Whether Plaintiffs and Rule 23 Class II members are entitled to restitution and/or damages by the amount Defendants deducted from their "route pay" for "independent contractor" administration expenses.

144. Relative to the allegations above, Plaintiffs' claims are typical of Rule 23 Class II claims.

145. Plaintiffs' claims and those of the members of the Rule 23 Class II arose from the same Defendants' actions or inactions herein, and the claims are based on the same legal theories.

146. The identity of the Rule 23 Class II members is readily ascertainable. (For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.)

147. Plaintiffs are adequate class representatives.

148. Plaintiffs' unjust enrichment claims are typical of those claims that could be alleged by any member of the Rule 23 Class II, and the relief sought is typical of the relief that would be sought by each member of the Rule 23 Class II in separate actions.

149.    Plaintiffs and Rule 23 Class II members are/were subject to the same unjust enrichment practices of Defendants.

150.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of the Rule 23 Class II claims herein, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

151.    Class action treatment will permit other similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions require.

152.    The adjudication of individual litigation claims would result in a significant expenditure of Court and public resources. However, treating the claims as a class action would result in significant savings.

153.    Although the relative damages suffered by individuals in the class are not *de minimis,* such damages are minor compared to the expense and burden of individual prosecution of this litigation.

154.    As a result, class treatment is a superior mechanism for resolving this dispute compared to adjudicating individual litigation claims.

155.    Current employees often fear asserting their rights due to concerns about direct or indirect retaliation. Former employees may be hesitant to bring individual claims because doing so could harm their employment prospects, future employment opportunities, and efforts to secure new employment. (Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing those risks.)

156. Plaintiffs have engaged legal counsel experienced in Rule 23 class action litigation to pursue their unjust enrichment claims and those of other Rule 23 Class II members.

157. The class action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The expenses, costs, and burden of litigation suffered by Plaintiffs and other members of this Rule 23 Class II action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to seek redress for the wrongs done to them individually.

158. Plaintiffs and other members of this Rule 23 Class II have suffered and will continue to suffer irreparable damage from the unlawful wage practices implemented and administered by Defendants.

## COUNT IV
## PLAINTIFF ANTOINE JENKINS FLSA RETALIATION CLAIM

159. Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

160. Plaintiff Antoine Jenkins was unlawfully discharged from his employment with Defendants in retaliation for complaining to Defendants' managers about his rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

161. Plaintiff Jenkins' complaints to Defendants about his rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

162. Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Jenkins' employment in retaliation for his engaging in activity protected under the FLSA.

163. Defendants had no other basis to terminate Plaintiff Jenkins' employment but for exercising his protected rights under 29 U.S.C. § 215(a)(3).

164. Plaintiff Jenkins' termination of employment was causally connected to his protected activity, as he was discharged from his employment almost immediately after complaining to Defendants about his rates of pay.

165. Defendants were aware of Plaintiff Jenkins' protected activity before terminating his employment.

166. As a result of his unlawful termination, Plaintiff Jenkins has suffered monetary damages (lost wages both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

167. Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating his employment.

**COUNT V**
**PLAINTIFF NANA S. EPHRAIM'S FLSA RETALIATION CLAIM**

168. Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

169. Plaintiff Nana S Ephraim was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

170. Plaintiff Ephraim's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

171. Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Ephraim's employment in retaliation for her engaging in activity protected under the FLSA.

172. Defendants had no other basis to terminate Plaintiff Ephraim's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

173. Plaintiff Ephraim's termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

174. Defendants were aware of Plaintiff Ephraim's protected activity before terminating her employment.

175. As a result of her unlawful termination, Plaintiff Ephraim has suffered monetary damages (lost wages both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

176. Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

**COUNT VI**
**PLAINTIFF ANTHONY JONES' FLSA RETALIATION CLAIM**

177. Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

178. Plaintiff Anthony Jones was unlawfully discharged from his employment with Defendants in retaliation for complaining to Defendants' managers about his rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

179. Plaintiff Anthony Jones' complaints to Defendants about his rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

180. Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Anthony Jones' employment in retaliation for his engaging in activity protected under the FLSA.

181. Defendants had no other basis to terminate Plaintiff Anthony Jones' employment but for exercising his protected rights under 29 U.S.C. § 215(a)(3).

182. Plaintiff Anthony Jones' termination of employment was causally connected to his protected activity, as he was discharged from his employment almost immediately after complaining to Defendants about his rates of pay.

183. Defendants were aware of Plaintiff Anthony Jones' protected activity before terminating his employment.

184. As a result of his unlawful termination, Plaintiff Anthony Jones has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

185. Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating his employment.

**COUNT VII**
**PLAINTIFF VIVIAN BAILEY'S FLSA RETALIATION CLAIM**

186. Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

187. Plaintiff Vivian Bailey was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert - all of whom were terminated "en masse."

188. Plaintiff Bailey's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

189. Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Bailey's employment in retaliation for her engaging in activity protected under the FLSA.

190. Defendants had no other basis to terminate Plaintiff Bailey's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

191.    Plaintiff Bailey's termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

192.    Defendants were aware of Plaintiff Bailey's protected activity before terminating her employment.

193.    As a result of her unlawful termination, Plaintiff Bailey has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

194.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

### COUNT VIII
### PLAINTIFF KENNETH DENSON'S FLSA RETALIATION CLAIM

195.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

196.    Plaintiff Kenneth Maurice Denson was unlawfully discharged from his employment with Defendants in retaliation for complaining to Defendants' managers about his rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

197.    Plaintiff Denson's complaints to Defendants about his rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

198.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Denson's employment in retaliation for his engaging in activity protected under the FLSA.

199.    Defendants had no other basis to terminate Plaintiff Denson's employment but for exercising his protected rights under 29 U.S.C. § 215(a)(3).

200.   Plaintiff Denson's termination of employment was causally connected to his protected activity, as he was discharged from his employment almost immediately after complaining to Defendants about his rates of pay.

201.   Defendants were aware of Plaintiff Denson's protected activity before terminating his employment.

202.   As a result of his unlawful termination, Plaintiff Denson has suffered monetary damages (lost wages both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

203.   Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating his employment.

## COUNT IX
## PLAINTIFF VONTASIA SAKIA COX'S FLSA RETALIATION CLAIM

204.   Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

205.   Plaintiff Vontasia Sakia Cox was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

206.   Plaintiff Cox's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

207.   Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Cox's employment in retaliation for her engaging in activity protected under the FLSA.

208.   Defendants had no other basis to terminate Plaintiff Cox's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

209.    Plaintiff Cox's termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

210.    Defendants were aware of Plaintiff Cox's protected activity before terminating her employment.

211.    As a result of her unlawful termination, Plaintiff Cox has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

212.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

**COUNT X**
**PLAINTIFF JAMES PARKER'S FLSA RETALIATION CLAIM**

213.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

214.    Plaintiff James Gregory Parker was unlawfully discharged from his employment with Defendants in retaliation for complaining to Defendants' managers about his rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

215.    Plaintiff Parker's complaints to Defendants about his rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

216.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Parker's employment in retaliation for his engaging in activity protected under the FLSA.

217.    Defendants had no other basis to terminate Plaintiff Parker's employment but for exercising his protected rights under 29 U.S.C. § 215(a)(3).

36

218.    Plaintiff Parker's termination of employment was causally connected to his protected activity, as he was discharged from his employment almost immediately after complaining to Defendants about his rates of pay.

219.    Defendants were aware of Plaintiff Parker's protected activity before terminating his employment.

220.    As a result of his unlawful termination, Plaintiff Parker has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

221.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating his employment.

## COUNT XI
## PLAINTIFF ROBIN JONES' FLSA RETALIATION CLAIM

222.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

223.    Plaintiff Robin Jones was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and "unpaid "wait time, along with other driver employees in concert, all of whom were terminated "en masse."

224.    Plaintiff Robin Jones' complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

225.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Robin Jones' employment in retaliation for her engaging in activity protected under the FLSA.

226.    Defendants had no other basis to terminate Plaintiff Robin Jones' employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

227.   Plaintiff Robin Jones' termination of employment was causally connected to her protected activity in that she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

228.   Defendants were aware of Plaintiff Robin Jones' protected activity before terminating her employment.

229.   As a result of her unlawful termination, Plaintiff Robin Jones has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

230.   Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

### COUNT XII
### PLAINTIFF ANGELA BOONE'S FLSA RETALIATION CLAIM

231.   Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

232.   Plaintiff Angela Boone was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees, all of whom were terminated "en masse."

233.   Plaintiff Boone's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

234.   Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Boone's employment in retaliation for her engaging in activity protected under the FLSA.

235.   Defendants had no other basis to terminate Plaintiff Boone's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

236.    Plaintiff Boone's termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

237.    Defendants were aware of Plaintiff Boone's protected activity before terminating her employment.

238.    As a result of her unlawful termination, Plaintiff Boone has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

239.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

**COUNT XIII**
**PLAINTIFF NYAH CHERRY'S FLSA RETALIATION CLAIM**

240.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

241.    Plaintiff Nyah Cherry was unlawfully discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert - all of whom were terminated "en masse."

242.    Plaintiff Cherry's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

243.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Cherry's employment in retaliation for her engaging in activity protected under the FLSA.

244.    Defendants had no other basis to terminate Plaintiff Cherry's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

245.    Plaintiff Cherry's termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

246.    Defendants were aware of Plaintiff Cherry's protected activity before terminating her employment.

247.    As a result of her unlawful termination, Plaintiff Cherry has suffered monetary damages (lost wages both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

248.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

## COUNT XIV
## PLAINTIFF ERICA WILLIAMS' FLSA RETALIATION CLAIM

249.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

250.    Plaintiff Erica Williams was discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

251.    Plaintiff Williams' complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

252.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Williams' employment in retaliation for her engaging in activity protected under the FLSA.

253.    Defendants had no other basis to terminate Plaintiff Williams' employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

254.    Plaintiff Williams' termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

255.    Defendants were aware of Plaintiff Williams' protected activity before terminating her employment.

256.    As a result of her unlawful termination, Plaintiff Williams has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

257.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

**COUNT XV**
**PLAINTIFF DOMINIQUE COX'S FLSA RETALIATION CLAIM**

258.    Plaintiffs incorporate by reference all preceding paragraphs as fully as rewritten herein.

259.    Plaintiff Dominique Cox was discharged from her employment with Defendants in retaliation for complaining to Defendants' managers about her rates of pay and unpaid "wait" time, along with other driver employees in concert, all of whom were terminated "en masse."

260.    Plaintiff Cox's complaints to Defendants about her rates of pay and unpaid "wait" time were protected activities under 29 U.S.C. § 215(a)(3).

261.    Defendants violated 29 U.S.C. § 215(a)(3) by terminating Plaintiff Cox's employment in retaliation for her engaging in activity protected under the FLSA.

262.    Defendants had no other basis to terminate Plaintiff Cox's employment but for exercising her protected rights under 29 U.S.C. § 215(a)(3).

263.    Plaintiff Coxs' termination of employment was causally connected to her protected activity, as she was discharged from her employment almost immediately after complaining to Defendants about her rates of pay.

264.    Defendants were aware of Plaintiff Cos's protected activity before terminating her employment.

265.    As a result of her unlawful termination, Plaintiff Cox has suffered monetary damages (lost wages, both present and future), compensatory damages (emotional distress, loss of reputation, etc.), and other legal and equitable damages.

266.    Defendants' conduct was willful and in reckless disregard of clearly established FLSA provisions in terminating her employment.

## PRAYER FOR RELIEF

Whereas, Plaintiffs, individually, and/or on behalf of themselves and all others similarly situated, request this Court to grant the following relief against Defendants:

A.    A declaration that Defendants are joint employers of Plaintiff and those similarly situated regarding their unpaid wage and unjust enrichment claims;

B.    A declaration that Defendants are an integrated enterprise as defined by the FLSA and Rule 23 Class I state wage laws relative to the unpaid wage claims of Plaintiffs and those similarly situated;

C.    A declaration that Plaintiffs and those similarly situated are protected non-exempt employees under the FLSA and Rule 23 Class I State wage laws;

D.    A declaration that Defendants have violated and are continuing to violate the FLSA and Rule 23 Class I State wage laws by their failure to pay Plaintiffs and those similarly

situated minimum wages and any applicable overtime compensation during all times material;

E.      A declaration that Defendants' violations of the FLSA and Rule 23 Class II state wage laws were willful;

F.      A declaration that all terms and conditions in any contracts in which Diligent has misclassified Plaintiffs and those similarly situated as independent contractors are unconscionable, null, void, and unenforceable;

G.      A declaration requiring Defendants to comply with the FLSA and Rule 23 Class I State wage laws by promptly paying Plaintiffs and those similarly situated for all hours worked at the appropriate rates of pay;

H.      An award to Plaintiffs and those similarly situated for unpaid minimum wages and any applicable overtime compensation for all work hours performed for Defendants;

I.       An award to Plaintiffs and those similarly situated for any applicable statutory, compensatory, and liquidated damages, appropriate statutory penalties, treble damages, and restitution to be paid by Defendants;

J.      An award of prejudgment and post-judgment interest at the applicable legal rate to FLSA Plaintiffs and Rule 23 and Class I and II members;

K.      An award to Plaintiffs and those similarly situated for attorneys' fees and costs of this lawsuit.

L.      Promptly issue notices pursuant to 29 U.S.C. § 216(b), apprising potential plaintiffs of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

M.     Certification of Count II as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

N.     Certification of Count III as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

O.     A judgment in favor of Plaintiff and Rule 23 Class II members for their unjust enrichment claims;

P.     An award of damages to Plaintiff Antoine Jenkins for his retaliatory claims;

Q.     An award of damages to Plaintiff Nana S. Ephraim for her retaliatory claims;

R.     An award of damages to Plaintiff Anthony Jones for his retaliatory claims;

S.     An award of damages to Plaintiff Vivian Bailey for her retaliatory claims;

T.     An award of damages to Plaintiff Kenneth Maurice Denson for his retaliatory claims;

U.     An award of damages to Plaintiff Vontasia Sakia Cox for her retaliatory claims;

V.     An award of damages to Plaintiff James Gregory Parker for his retaliatory claims;

W.     An award of damages to Plaintiff Robin Jones for her retaliatory claims;

X.     An award of damages to Plaintiff Angela Boone for her retaliatory claims;

Y.     An award of damages to Plaintiff Nyah Cherry for her retaliatory claims;

Z.     An award of damages to Plaintiff Erica Williams for her retaliatory claims;

AA.     An award of damages to Plaintiff Dominique Cox for her retaliatory claims;

BB.     A reasonable incentive/assistance award to Plaintiffs to compensate them for the time spent attempting to recover wages and unjust enrichment damages for those similarly situated and the risks they took in bringing and prosecuting this lawsuit; and

CC.     Such other general and specific relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a **TRIAL BY JURY** on all issues so triable.


December 9, 2025                                    Respectfully Submitted

                                                   *s/Lori J. Keen*
                                                   McMurry & Livingston, PLLC
                                                   201 Broadway
                                                   P.O. Box 1700
                                                   Paducah, KY 42002-1700
                                                   270-443-6511
                                                   Fax: 270-443-6548
                                                   Email: lkeen@ml-lawfirm.com

                                                   &

                                                   J. Russ Bryant (TN BPR #33830)
                                                   (Pro Hac Vice Pending)
                                                   **JACKSON, SHIELDS, HOLT OWEN & BRYANT**
                                                   Attorneys at Law
                                                   262 German Oak Drive
                                                   Memphis, Tennessee 38018
                                                   Telephone: (901) 754-8001
                                                   Facsimile: (901) 754-8524
                                                   *rbryant@jsyc.com*


                                                   ***ATTORNEYS FOR PLAINTIFF AND FOR OTHERS SIMILARLY SITUATED***